IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| **EDWARD G. HUNTER,**<br><br>　　　　Plaintiff,<br><br>v.<br><br>HCA, et. al.,<br><br>　　　　Defendants. | **REPORT AND RECOMMENDATION**<br><br>Case No. 1:17-cv-00060-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

# INTRODUCTION

This case is currently before Magistrate Judge Dustin Pead pursuant to a 28 U.S.C. §636(b)(1)(B) referral from District Court Judge Jill Parrish. (ECF No. 8.) Mr. Edward G. Hunter ("Plaintiff") brings this action against Defendants (collectively "Defendants" or "ORMC") alleging claims of deprivation of due process, breach of contract, violation of the Americans with Disability Act ("ADA") or Rehabilitation Act, violation of Title VII of the Civil Rights Act of 1964, defamation, retaliation, harassment, and violation of Utah's drug testing laws. (Amended Complaint ("Am. Compl."), ECF No. 36.)

Defendants filed a motion to dismiss the amended complaint pursuant to Federal Rule Civil Procedure 12(b)(6). Attached to the motion is approximately 59 pages consisting of various letters, emails, and legal documents from the administrative action with the Division of Occupation and Professional Licensing ("DOPL"). On September 11, 2018, this court converted Defendants' motion to one for summary judgment pursuant to Federal Rule Civil Procedure 12(d) because the introduction of those documents constituted matters outside of the pleadings. (ECF No. 50.)

Accordingly, each party was afforded an opportunity to submit all pertinent material to a summary judgment motion. *Id.* Briefing concluded in December of 2018. The court has carefully reviewed and considered the parties' summary judgment briefs. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court concludes oral argument is unnecessary.

## CAUSES OF ACTIONS DISMISSED

In his Memorandum in Response to Defendants' Motion for Summary Judgment ("Opposition"), Plaintiff supports dismissal with prejudice of many of his claims. (Opposition, ECF No. 53 at 13, 15-17.) Plaintiff, however, requests the court deny summary judgment as to his first and second causes of action (breach of contract claims) and permit him leave to amend his ADA or Rehabilitation Act claim. Accordingly, the court RECOMMENDS the District Court dismiss all of Plaintiff's constitutional, criminal, and common law claims with prejudice consistent with the agreement of the parties. In turn, this Report and Recommendation addresses the remaining causes of actions and for the reasons set forth herein, the court RECOMMENDS the District Court GRANT Defendants' Motion for Summary Judgment ("Motion") as to the remaining claims. (ECF No. 51.)

## SUMMARY OF FACTS

From 2002 to 2017, Plaintiff was employed by Utah Imaging Associates ("UIA") as an interventional radiologist physician assistant. Am. Compl. at 4, ¶9. Plaintiff had privileges at ORMC, as well as other hospitals, to perform radiology and minimally invasive in-patient and out-patient procedures. *Id.* During Plaintiff's time at ORMC, Plaintiff experienced significant personal issues that, as he acknowledges, compromised the safety of patients and co-workers.

*See* Motion at 3, ¶3; Opposition at 4, ¶3; *see also* Plaintiff's December 5, 2016 Letter to DOPL ("DOPL Letter"), (ECF No. 53-2 at 3.)

One such example occurred on October 24, 2016, when Plaintiff acted erratically during an interventional radiology procedure with a pediatric patient. As a result, another physician intervened. *See* Motion at 3, ¶4; Opposition at 4-5, ¶4. Plaintiff became angry, broke sterility protocol, and began yelling and screaming. *See* Motion at 3, ¶5; Opposition at 5, ¶5. Also, staff members at ORMC noticed Plaintiff sleeping at his desk while on duty, was difficult to rouse, and appeared heavily intoxicated during this same time period. *See* Motion at 3, ¶6; Opposition at 5, ¶6; *see also* DOPL Stipulation and Order, (ECF No. 51-1 at 3); DOPL Letter at 2. Plaintiff denies being intoxicated; however, he does admit using prescription medication that made him drowsy or could have made him appear intoxicated. *See* Opposition at 5, ¶6.

On October 28, 2016, ORMC conducted what Plaintiff has described as an intervention to discuss his problems. *See* DOPL Letter at 2. According to ORMC's bylaws, a collegial and educational intervention "…is used to address issues pertaining to clinical competence or professional conduct." ORMC Bylaws, (ECF No. 53-1 at 3-4.) Such interventions are used "…to prompt voluntary actions by the individuals to resolve an issue that has been raised,…prior to resorting to formal corrective action,…and [do] not afford the individual subject to such intervention[] to a Hearing and Appeal…." *Id.*

During the October 28th intervention, Plaintiff was asked to submit to a drug test, which he did. *See* DOPL Letter at 2. Subsequently, the drug test results confirmed Plaintiff was taking his prescription narcotics and benzodiazepines. *See* Motion at 4, ¶9; Opposition at 7, ¶9. Plaintiff further referred to the levels as "toxic". DOPL Letter at 2. In turn, UIA requested Plaintiff meet with DOPL to discuss his problems, which he did. *See* DOPL Letter at 2.

Between October 28, 2016 and November 2, 2016, ORMC received complaints on its Ethics and Compliance hotline regarding unprofessional conduct by Plaintiff. *See* Motion at 4, ¶10; *see also* November 2, 2016, email from Brian Lines to Brett Palmer ("Lines email"), (ECF No. 53-3 at 2.) Consistent with the Ethics and Compliance policy, ORMC conducted an investigation, which included interviewing multiple sources who validated the claims submitted via the Ethics hotline. *See* Lines email at 2; *see also* Ethics and Compliance policy, ECF No. 51-1 at 11-15. As a result of the Ethics and Compliance hotline investigation, ORMC requested that Plaintiff not return work at ORMC. *See* Lines email at 2; DOPL Letter at 3. On December 1, 2016, Plaintiff resigned his privileges at ORMC. *See* Resignation Letter, (ECF No. 53-4 at 2.) Thereafter, Plaintiff self-reported his actions to DOPL. *See* DOPL Letter at 2-3.

## LEGAL STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008). When employing this standard, the court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

A movant who does not bear the ultimate burden of persuasion at trial, need not negate the other party's claim. *See Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169

(10th Cir. 2010).  Rather, the movant needs to point to a lack of evidence for an essential element of the opposing party's claim.  *Id.*  After the movant has met this initial burden, the onus shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The non-moving party must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l, Inc. v. First Affiliated Sec, Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).  "A party asserting that a fact…is genuinely disputed must support the assertion by…citing to particular parts of the materials in the records, including depositions, documents, electronically stored information, affidavits or declarations,…admissions,…or other materials."  Fed. R. Civ. P. 56(c)(1).

The court, however, may disregard a party's version of facts under certain circumstances.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Furthermore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris,* 550 U.S. 327, 378-81 (2007).

## DISCUSSION

Defendants move for summary judgment on Plaintiff's breach of contract claims asserting the October meeting was a "collegial intervention" and not a "summary suspension." In support of its contention, Defendants direct the court's attention primarily to Plaintiff's December 5, 2016 letter to DOPL wherein he admits the meeting was an intervention.

In response, Plaintiff argues the October meeting did not constitute a collegial intervention consistent with ORMC's bylaws and instead crossed over to a summary suspension or restriction of his privileges at the facility. As a result, Plaintiff claims Defendants are in breach of contract because they failed to afford him the opportunity of a hearing and the right to appeal prior to restricting his privileges at ORMC.

A. Plaintiff's Breach of Contract Claims

Plaintiff's first cause of action, breach of contract, is one of the two remaining causes of action in the Amended Complaint. *See* Am. Compl. at 5-8. According to Plaintiff, prior to corrective action being taken against him and consistent with ORMC's bylaws, he should have been afforded a hearing and the right to appeal. This did not occur and therefore, Plaintiff argues, ORMC is in breach of contract.

The court's review is limited to whether there is a genuine dispute about what happened during the October 28, 2016, meeting between Plaintiff and ORMC and whether that meeting qualified as a collegial intervention. The court recognizes that upon first blush it is easy to meld the events that unfolded as a result of the October collegial intervention with the corrective action that resulted from the Ethics hotline investigation, as Plaintiff does in his Opposition. And while the court is sympathetic to Plaintiff's plight and recognizes the difficulties he faced in 2016, the court is obliged to thoughtfully examine his claims in light of the credible evidence.

Plaintiff clearly states that in October of 2016 he had an intervention due to his actions. *See* DOPL Letter at 2. Plaintiff continues that during the intervention his recent activities, sleeping in his office and yelling, were discussed. *Id.* This intervention prompted Plaintiff to voluntarily submit to a drug test, as Plaintiff confirmed in writing and close in time to the events that are now being challenged. *Id.* In short, it is Plaintiff's own admission that he and ORMC

participated in an intervention at the end of October of 2016 that evidences there is no genuine issue for trial.

Furthermore, a collegial and educational intervention "…is used to address issues pertaining to clinical competence or professional conduct." ORMC Bylaws, )ECF No. 53-1 at 3-4.)  Such interventions are used "… to prompt voluntary actions by the individuals to resolve an issue that has been raised,…prior to resorting to formal corrective action,…and [do] not afford the individual subject to such intervention[] to a Hearing and Appeal…." *Id*.  ORMC adhered to its bylaws and did not take corrective action against Plaintiff during the October intervention, which Plaintiff again acknowledges in the DOPL letter.  Specifically, ORMC discussed with Plaintiff his admittedly unprofessional conduct of sleeping while on duty and yelling at co-workers. Due to Plaintiff's conduct, Defendants asked Plaintiff to submit to a drug test, which Plaintiff voluntarily agreed to do.

Admittedly, the drug test request is the only action that occurred as a result of the October intervention, which is verified by Plaintiff's December 5, 2016 letter to DOPL. Moreover, Plaintiff's DOPL letter establishes that ORMC neither suspended nor terminated his privileges during or immediately after the October collegial intervention. Therefore, the court concludes no reasonable jury would agree with Plaintiff that the October intervention crossed over to a summary suspension or restriction,

In summary, Plaintiff's own letter to DOPL contradicts the version of facts he now submits to the court in his Opposition.  As established in his letter to DOPL, ORMC conducted a collegial intervention in October of 2016, which consistent with the bylaws does not afford an individual the right to a hearing or the right to appeal.  In turn, the court relies on the DOPL letter

for purposes of recommending the District Judge grant summary judgment as to Plaintiff's breach of contract claim.

    B.  Plaintiff's Ethics Hotline Protocol Claim

Plaintiff's claim that ORMC violated its Ethics and Compliance policy is equally flawed. Turning again to Plaintiff's DOPL letter, there is not a genuine material fact in dispute because the intervention and the Ethics hotline resulted in very different outcomes for Plaintiff.

After completing the collegial intervention on October 28, 2016, ORMC received complaints about Plaintiff's conduct via the Ethics hotline. Those complaints were investigated by a case manager, separate and apart from the October intervention. Indeed, Plaintiff in a section of his DOPL letter entirely unrelated to the topic of the intervention states that "[d]ue to my actions, [] ORMC… ha[s] perform[ed] an investigation of these events" and, as a result, he was asked to surrender his privileges, which he did. DOPL letter at 3. Unlike the intervention, wherein Plaintiff only submitted to a drug test and his privileges remained intact, after the Ethics hotline investigation, Plaintiff was asked to surrender his privileges. Plaintiff verified as much in his December 5, 2016, letter to DOPL.

Furthermore, Plaintiff fails to direct the court's attention to any section of the Ethics and Compliance policy that supports the claim that he should have been afforded a hearing and appeal after the Ethics hotline investigation concluded and prior to corrective action being taken. This failure is easily addressed because the plain text of the Ethics and Compliance policy does not afford individuals who are the subject of an investigation, such as the Plaintiff, with these rights. Therefore, in light of Plaintiff's written admissions and plain text of the policy, summary judgment should be granted as to Plaintiff's Ethics hotline claim.

    C.  Plaintiff's ADA or Rehabilitation Act Claim

The remaining issue for the court to address is whether Plaintiff should be granted leave to amend his ADA or Rehabilitation Act claims. The answer is no. Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading with consent by the parties or with the court's permission. *See* Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. Nevertheless, a district court may deny a motion to amend for reasons such as undue delay, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *See Foman v. Davis,* 371 U.S. 178, 182 (1962).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason...." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citations omitted). "The futility question is the functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim…." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff's sole mention of the ADA of 1990, as part of one lengthy sentence of the amended complaint, is insufficient to allow leave to amend due to the likely futility of the proposed amendment. Plaintiff agrees that he has no employment-related ADA claims against ORMC because he was never employed by ORMC. *See* Opposition at 14-15. Yet, Plaintiff seeks more time to develop facts to claim ORMC violated the "public accommodations" requirement of the ADA or Rehabilitation Act. *Id.*

Plaintiff, however, should not be granted leave to amend for a myriad of reasons including his proposed amendment is futile. First, Plaintiff has failed to pursue the filing a

motion consistent with Federal Rule Civil Procedure 15.  Second, Plaintiff did not set forth any facts in either his initial complaint or the amended complaint that establish a legally-cognizable disability.  Third, there is no evidence before the court in any pleading that ORMC took action against Plaintiff related to a physical condition, let alone a disability.  And fourth, there is no evidence that ORMC did not accommodate anyone, let alone Plaintiff, who entered the facility.  Consequently, Plaintiff's proposed amendment is likely to be futile and Plaintiff's request for permission to amend should be denied.

## RECOMMENDATION

For the reasons stated above, the court hereby RECOMMENDS as follows to the District Court:

1. Defendants' Motion for Summary Judgment be GRANTED;
2. Defendants' Motion to Dismiss be MOOTED;

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within fourteen (14) days of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 28th day of January, 2019.

By the Court:

Dustin B. Pead
United States Magistrate Judge